**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| BUCKEYE STATE MUTUAL INSURANCE COMPANY,<br>    Plaintiff,<br><br>    v.<br><br>PATRICIA HALL, HARRY HALL, BRIEANNA SHIVLEY, a minor, JIM LITTRELL, father of Brieanna Shivley, and SUSAN SHIVLEY, mother of Brieanna Shivley,<br>    Defendants.<br><br>_____<br><br>PATRICIA HALL AND HARRY HALL,<br>    Third-Party Plaintiffs,<br><br>    v.<br><br>TERENCE E. BRENNAN, JR. a/k/a TERRY BRENNAN, and BURT INSURANCE AGENCY,<br>    Third-Party Defendants. | CAUSE NO.:  2:05-CV-21-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 36], filed by Plaintiff Buckeye State Mutual Insurance Company ("Buckeye") on May 31, 2006.  For the following reasons, the Court grants the Motion for Summary Judgment.

**PROCEDURAL BACKGROUND**

On January 19, 2005, Plaintiff, Buckeye, filed a Complaint for Declaratory Judgment in this Court seeking a declaration that Harry and Patricia Hall ("the Halls") are not entitled to coverage for their niece Brieanna Shivley's claim against the Halls' insurance policy with Buckeye.

On March 7, 2005, the Halls filed their Answer to Buckeye's Complaint.

On March 8, 2005, Brieanna Shivley and her mother, Susan Shivley, filed their Answer to Buckeye's Complaint.

On May 31, 2006, Buckeye filed the instant Motion for Summary Judgment and a Memorandum in Support of its Motion for Summary Judgment. On June 30, 2006, the Halls filed their Memorandum in Opposition to Buckeye's Motion for Summary Judgment. Brieanna Shivley, her mother Susan Shivley and her father Jim Littrell also filed a Memorandum in Opposition to Buckeye's Motion for Summary Judgment on June 30, 2006. Buckeye filed its Reply Brief in Support of its Motion for Summary Judgment on July 7, 2006.

On August 24, 2006, Brieanna Shivley and Susan Shivley filed suit in Porter County Superior Court seeking recovery for the injuries Brieanna sustained as a result of being bitten by the Halls' dog.

On September 22, 2006, Third-Party Defendants Terence E. Brennan, Jr. a/k/a Terry Brennan and Burt Insurance Agency filed a Motion to Stay Proceedings seeking to stay the instant proceeding until the Shivleys' state court action is resolved. On October 3, 2006, Plaintiff Buckeye State Mutual Insurance Company filed a Response to Third-Party Defendants' Motion to Stay Proceedings. The Third-Party Defendants did not file a reply brief. On November 22, 2006, this Court granted in part and denied in part the Motion to Stay Proceedings. The Court granted the

motion as to Buckeye's request for a declaratory judgment on its duty to indemnify and the Halls' Third-Party Complaint for indemnification.  The Court denied the motion as to Buckeye's request for declaratory judgment on the duty to defend the Halls in the Indiana state-court litigation.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law.  In other words, the record must reveal that no reasonable jury could find for the non-moving party."  *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving

3

party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R.*

4

*Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## FACTUAL BACKGROUND

The following facts are viewed in the light most favorable to the Halls, the Shivleys and Mr. Littrell, the nonmoving parties.  At the end of 2002, Patricia Hall's homeowner's insurance carrier notified her of a prospective rate increase.  Mrs. Hall decided to look for a new carrier and contacted her auto insurance agent, Terry Brennan of Burt Insurance, who told her that he would find a new carrier for her homeowner's insurance.  Mrs. Hall informed Mr. Brennan that she wanted insurance that would cover earthquakes, her woodburning stove and her dogs.  At the time that Mrs. Hall sought insurance with Buckeye, she owned six dogs, including a ninety-pound Doberman Pinscher.   None of the Halls' dogs had any prior bite history.

Before Mrs. Hall submitted her application, Mr. Brennan personally visited the Halls' home to assess the risks of the site on Buckeye's behalf.  The record does not indicate that Mr. Brennan went inside the Halls' home, but rather, that he examined the perimeter of the property and took photographs.  In his deposition, Mr. Brennan testified that he did not observe any animals on the day he inspected the property.  Conversely, Mrs. Hall asserts that her dogs bark loudly anytime cars stop in the driveway or a person enters the yard,  and that a person can hear the dogs even when the doors and windows of the house are closed.

On January 9, 2003, Patricia Hall met with Mr. Brennan to fill out her application for a homeowner's insurance policy through Buckeye. During the meeting, Mr. Brennan asked Mrs. Hall each of the questions listed on the application and filled out the answers based on her responses. Question nine on the General Information Section read "Does applicant or any tenant have any animals or exotic pets? (Note breed and bite history)." Mrs. Hall then told Mr. Brennan that she owned dogs. Mrs. Hall's account of the exchange reads as follows in her deposition:

> Q. So you were asked in the question No. 9, "Does applicant or any tenant have any animals or exotic pets?"
> A. Yes I was.
> Q. And were you asked the question in precisely those words?
> A. He asked me the question as it states [on the application], and I told him I had dogs.
> Q. So he asked you, "Does applicant - -" or "Do you have any animals or exotic pets?" and you said, "I have dogs"?
> A. That's correct.
> Q. And what happened in terms of further conversation on that subject?
> A. He went on.
> Q. So was there any further questions about the dogs or anything of that sort?
> A. The only thing he asked me was, "Do you have a vicious dog?" and I said no.
> Q. Was that in response to you saying, "Yes, I have dogs"?
> A. Yes.
> Q. I want to make sure I got this sequence exactly right. Is it fair to say that he asked you something to the effect of, "Do you have any animals or exotic pets?" and you said, "Yes, I have dogs," to which he said, "Do you have vicious dogs?" to which you said "no"?
> A. That's correct.
> Q. Was there any other discussion on that subject?
> A. No.

(Def. Br., Exh. 1, pp. 18-19; Hall Dep. 27-28, June 3, 2005.)

Mr. Brennan then marked "No" in response to the question on the application. After the two had completed the remaining answers together, Mr. Brennan directed Mrs. Hall to the bottom of the application and instructed her to read the bottom portion and sign it. The portion of the application directly above Mrs. Hall's signature reads as follows:

6

> Applicant's Statement: I have read the above application and any attachments. I declare that the information provided in them is true, complete and correct to the best of my knowledge and belief. This information is being offered to the company as an inducement to issue the policy for which I am applying.

(Buckeye Br., Exh. 1, A, p. 7.)

In her deposition, Mrs. Hall acknowledged that she read and understood the Applicant's Statement, but that she did not read the contents of the application before or after Mr. Brennan had filled it out because Mr. Brennan seemed to be in a rush. Mrs. Hall testified that had she read the application, she would have asked Mr. Brennan why he had checked "No" in answer to the question asking if the applicant had animals. Mrs. Hall also testified that she trusted Mr. Brennan to obtain the coverage that she had requested and relied on his knowledge and expertise to fill out the application.

In Mr. Brennan's deposition, he acknowledged that he had filled out the Halls' application for insurance with Buckeye on the specific form that Buckeye required. He stated that he would explain the questions to clients if the clients wanted to know why the insurance company was asking for certain information. In his deposition, Mr. Brennan described the kind of explanation he would commonly provide for the question asking if the applicant had animals as follows:

> Q. Is there any particular explanation that you would typically utilize in responding to that question?
> A. Yes.
> Q. And what would you typically advise, or what would you typically say?
> A. The liability limit on the policy is established and would be responsible for paying that out, so if you buy a vicious dog, if you get anything like that, the company would be responsible. That's why they're asking.
> Q. Now I presume that a lot of people have pets?
> A. Yeah.
> Q. All right. And what I am curious about is you mentioned a vicious dog. It does say, "Note breed and bite history." If people own animals but they're not vicious, how do you handle that?

7

>     A.  If, for example, you owned a parakeet or a Labrador Retriever, we would just
>         note that they own a parakeet and a Labrador Retriever in the remarks.

(Def. Br., Exh. 2, p. 16; Brennan Dep., 59, November 28, 2005.)

At the time that Mrs. Hall completed her application, Buckeye refused as a matter of policy to underwrite insurance for applicants who disclosed on their applications that they owned certain breeds of dogs, including Doberman Pinschers. In connection with this policy, Buckeye had issued a document titled "Homeowner Program Indiana" both internally and to its agents, listing the risks to which the agents could not bind the company. The document included a list of the breeds of dogs for which Buckeye refused to issue coverage. Terrance Brennan was aware of the guidelines at the time he filled out the Halls' application.

In August 2004, the Halls' Doberman Pinscher bit their infant niece, Brieanna Shivley in the face while Brieanna was visiting the Halls' home. As a result of the bite, the Halls filed a claim against their policy with Buckeye. Buckeye then instituted an Action for Declaratory Judgment in this Court.

## ANALYSIS

In its Motion for Summary Judgment, Buckeye asks the Court to find that the Halls' policy is void due to a material misrepresentation on the Halls' policy application and to enter judgment in its favor as a matter of law. In response, the Halls, Shivleys and Mr. Littrell (collectively, "the Defendants") ask the Court to find that there are issues of material fact such that summary judgment is inappropriate. The Defendants assert that Mr. Brennan interpreted the application question regarding animals and exotic pets to apply only to vicious animals. The Defendants argue that Mr. Brennan and Buckeye's interpretations of the question indicate that reasonable minds could differ

as to the meaning of the question and that any ambiguity must be construed against Buckeye as the drafter of the contract. In addition, the Defendants assert that Buckeye had notice of the Halls' dogs because Mrs. Hall informed Mr. Brennan of that fact and Mr. Brennan's knowledge is imputed to Buckeye because he is Buckeye's agent.

### A. The Halls Misrepresented a Material Fact.

Under Indiana law, an insurance company may void coverage when there has been a material misrepresentation on the insurance application. *See Foster v. Auto-Owners Ins. Co.*, 703 N.E.2d 657, 659 (Ind. 1998); *Jesse v. Am. Comm. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind. Ct. App. 2000). A fact is material where the misrepresentation of the fact could reasonably influence the insurer in deciding whether to accept or reject the insured risk. *See Fed. Kemper Ins. Co. v. Brown*, 674 N.E.2d 1030, 1035 (Ind. Ct. App. 1997). A material misrepresentation prevents a "meeting of the minds" as to the terms of the contract. *Colonial Penn. Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997) (citing *Stockberger v. Meridian Mut. Ins. Co.*, 395 N.E.2d 1272, 1279 (Ind. Ct. App. 1979)).

Indiana recognizes two views of misrepresentation of material fact. *Guzorek*, 690 N.E.2d at 672-73. Under the first view, when an insured misrepresents a fact that would have influenced an insurer's decision to issue the policy, the entire insurance contract is voidable at the insurer's option. *Id*. at 673. Whether the applicant intended to mislead the insurer is irrelevant. *Id*. The second view applies in circumstances where an insurer seeks to rescind a policy after a loss has already occurred. *Id*. In such circumstances, a court measures materiality against the loss. *Id*. Coverage of the incurred loss is voided if the misrepresentation affected that risk, but all other

9

coverage under the policy is not necessarily void. *Id*. The materiality of the misrepresentation is a question to be resolved by the finder of fact unless reasonable minds could not differ. *Id. See also Safe Auto Ins. Co. v. Farm Bureau Ins. Co.*, 856 N.E.2d 156, 161 (Ind. Ct. App. 2006) (following the *Guzorek* analysis of "material fact" when an insurance company sought to rescind a policy after a loss had occurred).

In this case, the material misrepresentation occurred when the Halls' application reflected "no" as a response to the question asking whether the applicant owned any animals or exotic pets when in fact the Halls owned six dogs. Because Buckeye had previously issued a document to its agents informing them that Doberman Pinschers were specifically excluded from coverage, there can be no reasonable difference of opinion that the fact that the Halls owned a Doberman would have influenced Buckeye's decision to issue the Halls a policy. Moreover, the Halls' claim against the policy arises from an incident in which their Doberman bit their niece Brieanna Shivley, a loss that goes directly to the misrepresented risk. Accordingly, the incorrect answer regarding animals on the application was a misrepresentation of material fact under either Indiana view of the issue. Because the Halls' application contained a misrepresentation of material fact, the Court finds that the dog bite incident at issue is not covered under the Buckeye policy. The parties do not raise the issue and the Court need not reach the question of whether the policy is entirely void or may be modified to reflect the risks Buckeye was actually aware of from the Halls' application.

**B.  The Application Question Regarding Animals is Not Ambiguous.**

The Defendants argue that Buckeye's application for insurance was ambiguous and must be construed against Buckeye as the drafter of the application. The Defendants assert that the alleged difference in interpretation between Buckeye and Mr. Brennan establishes the question's ambiguity.

Insurance contracts are subject to the same rules of interpretation as other contracts. *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246 (Ind. 2005). If a contract is clear and unambiguous, the language of the contract is given its plain meaning. *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006). A contract is ambiguous where "a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning." *Boesecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000). In the insurance context, if the contract is ambiguous, then the language is to be construed against the insurer and viewed from the perspective of the insured. *Id*. The court may consider extrinsic evidence when the meaning of the contract cannot be gleaned from the four corners of the instrument. *Chicago S. Shore and S. Bend R.R. v. Itel Rail Corp.*, 658 N.E. 2d 624, 633 (Ind. Ct. App. 1995). However, when a contract is clear and unambiguous, the terms of the contract are conclusive and the court will not consider extrinsic evidence. *Allstate Ins. Co. v. Burns*, 837 N.E.2d 645, 651 (Ind. Ct. App. 2005).

Upon examination of the question at issue on the application, the Court finds that the question is not ambiguous. The question "Does applicant or any tenant have any animals or exotic pets?" requires a simple yes or no answer and is not, by its plain language, limited to any particular types of animals or animals with vicious propensities. The second part of the question, "Note breed and bite history" is also unambiguous. If the applicant answers that he or she has animals, the applicant is merely asked to provide basic factual information about the animals. The Court finds that an interpretation that suggests the question applies only to vicious animals or animals with a bite history is not objectively reasonable. As Buckeye points out, at least one other court has found a

similar question on an insurance application to be plain and unambiguous in a fact pattern similar to the one in this case.  *See Danbury Ins. Co. v. Ginnetti*, No. 3:02CV2097 (RNC), 2004 WL 2009281 (D. Conn. August 5, 2004).

The only support the Defendants supply for their proposition that Buckeye's contract is ambiguous is the alleged difference in interpretation of the question between Buckeye and Mr. Brennan.  However, under Indiana law, the insured cannot establish a contractual ambiguity merely because a controversy exists and the insured asserts a different interpretation of a contractual provision from the insurer's interpretation.  *See Castillo v. Prudential Prop. & Cas. Ins. Co.*, 834 N.E.2d 204, 206 (Ind. Ct. App. 2005).  Because the Court finds that the plain language of the question is unambiguous, the Court will not consider extrinsic evidence to interpret the provisions of the contract.

### C.  Terrance Brennan's Knowledge of the Halls' Animals is Irrelevant.

The Defendants also argue that Mr. Brennan's knowledge of the Halls' animals is imputed to Buckeye because Mr. Brennan is Buckeye's agent.  The Defendants discuss Mr. Brennan's agency status and visit to the Halls' property at length to support the proposition that he knew or should have known of the Halls' animals and that his knowledge is imputable to Buckeye.  First, Buckeye does not contest Brennan's status as an agent of the company.  Second, Mr. Brennan's observations during his visit to the Halls' property are irrelevant because, viewing all facts in the light most favorable to the non-moving party, this Court takes as true Mrs. Hall's account that she directly informed Mr. Brennan that she owned six dogs.  Even if this Court accepts that Mrs. Hall directly informed Mr. Brennan of her dogs, Indiana law provides that Buckeye is not bound by Mr.

Brennan's knowledge because Mrs. Hall certified that the information on her application was true and correct when she signed it.

The Supreme Court of Indiana has recognized that an insurer cannot void coverage where the insurer "had knowledge of the facts notwithstanding the material misrepresentations, or where a reasonable person would have investigated further." *Foster*, 703 N.E.2d at 660 (citing *Guzorek*, 690 N.E.2d at 674). However, an insurer may rely on the representations of fact that an applicant for insurance makes on the application and is not under a duty to look beyond the representations as they appear on the application. *Foster*, 703 N.E.2d at 660 (citing *Guzorek*, 690 N.E.2d at 674). The Indiana Supreme Court has justified this rule by explaining that "[i]t is not unreasonable to demand that an insured supply accurate and complete information, read the application before signing it, and suffer the consequences if an omission or misstatement in the application is material to a subsequent loss." *Foster*, 703 N.E.2d at 660.

The Indiana Supreme Court cases that most closely parallel the current fact pattern include *Foster v. Auto-Owners Insurance Company* and *Metropolitan Life Insurance Company v. Alterovtiz*. In *Foster*, an insurance company sought rescission of a policy when it learned that the insured's fire insurance application contained a material misrepresentation. *Foster*, 703 N.E.2d at 658. In answer to the question on the application requiring the applicant to list all fire losses over the past five years, the box had been marked "none" when the insured had actually experienced three different fire losses over the time period. *Id*. The insured asserted that the agent had filled out the application with information that the insured had given the agent over the telephone. *Id*. The insured had signed the application on the signature line below the Applicant's Statement which read "I declare the facts in this Application to be true and request the Company to issue this insurance and any renewals thereof in reliance thereon." *Id*. When the insurance company sought to avoid coverage,

14

the insured argued that he had given truthful information to the insurance agent, even though his signed application did not accurately reflect the facts. *Id*. at 659. The Court rejected the insured's argument and held that he was responsible for the contents of his signed application, regardless of the agent's capacity as an agent of the insurance company. *Id*.

The Indiana Supreme Court supported its holding in *Foster* with the Court's prior reasoning in *Metropolitan Life v. Alterovitz*, a case with a fact pattern similar to that between the Halls and Buckeye. *Foster*, 703 N.E.2d at 659 (citing *Metropolitan Life v. Alterovitz*, 14 N.E.2d 570 (Ind. 1938)). In *Alterovitz*, the insured had provided truthful information about his medical history to the insurance company's medical examiner, but the medical examiner marked the application incorrectly. *Alterovitz*, 14 N.E.2d at 571-572. The insured signed his application which included a statement that "[t]his policy is issued in consideration of the application therefor, copy of which the application is hereto and made a part hereof. . .". *Id*. at 573. The policy also included an applicant's statement that read:

> I hearby certify that I have read the answers to the questions in Part A hereof and to the questions in Part B hereof before signing and that they have been correctly written as given by me and that they are full, true and complete and that there are no exceptions to any such answers other than as stated herein.

*Id*.

The Court held that the insured had an opportunity and a duty to read the contents of his application, was responsible for its contents and had adopted the answers on the application as his own. *Id*. at 198-99, 203.

Similarly, in *Federal Kemper Insurance Company v. Brown*, the insured alleged that he had given accurate information to the insurance agent and that she had filled out the application incorrectly. 674 N.E.2d 1030, 1032 (Ind. Ct. App. 1997). The insured relied on the agent to have

15

filled out the form correctly and signed the application without reading it. *Id*. The application contained a statement that read: "For all applicants: I certify that all statements on this application are true and correct and that they are offered as an inducement to the Company to issue the policy for which I am applying." *Id*. The Indiana Court of Appeals held that the insured was chargeable with the contents of the application, in spite of his claim of good faith. *Id*. at 1035. The Court explained that "[t]o hold otherwise would be to ignore totally and render meaningless [the insured's] signature certifying the contents of the application as true and correct." *Id*.

Like the insureds in *Foster*, *Alterovitz* and *Brown*, Mrs. Hall asserts that she gave correct information to her insurance agent, Mr. Brennan. Also, like the insured in *Brown,* Mrs. Hall claims that she did not read the application and relied on the agent to fill out the form correctly. However, similar to the contracts in *Foster*, *Alterovitz* and *Brown*, the Halls' contract with Buckeye included an Applicant's Statement in which Mrs. Hall certified that she had read the application, that her answers were true, complete and correct and that she was offering the information to Buckeye as an inducement to issue her insurance. Pursuant to the decisions in *Foster*, *Alterovitz* and *Brown*, this Court finds that under Indiana law, Mrs. Hall had a duty to read her application before signing it and that by her signature, she adopted the answers in her application as her own, regardless of Mr. Brennan's knowledge of her actual situation.

The Defendants' attempt to distinguish *Foster* by pointing out that unlike the insured in *Foster*, Mrs. Hall relied on Mr. Brennan's interpretation of the question at issue when she filled out the application. The record does not support this inference. Mrs. Hall's own account of her conversation with Mr. Brennan indicates only that Mr. Brennan asked her the question as written and then asked if her dogs were vicious. Her account does not indicate that Mr. Brennan interpreted the question differently from the way it appeared on the contract or to apply only to vicious animals.

16

Neither does Mr. Brennan's account of the way in which he typically explained the question to clients indicate an interpretation outside the plain language of the question.[1]

The Defendants also attempt to distinguish *Foster* on its facts, but the facts that the Defendants cite are part of the *Foster* Court's discussion of the argument that the insurance company was on inquiry notice of the misrepresentation. Because Mrs. Hall certified her answers on the application, the issue of inquiry notice is irrelevant.[2] The facts the *Foster* Court cited in its discussion of inquiry notice do not pertain to that Court's discussion of the material misrepresentation on the insured's application or the Court's conclusion that the applicant was responsible for the contents of his signed application. See *Foster*, 703 N.E.2d at 659-61.

The other cases Defendants cite to support the proposition that Mr. Brennan's actual knowledge of Mrs. Hall's dogs should be imputed to Buckeye are markedly dissimilar to the fact pattern of the instant case. In *General Accident Fire & Life Assur. Co. Corp. v. Browne*, the insurer sought to rescind coverage alleging a material misrepresentation regarding past cancellations of automobile insurance. 217 F.2d 418, 421-22 (7th Cir. 1954). The insured's prior policy permitted cancellation by surrender to the insured. *Id*. at 422. The Court found that the insured's failure to list the surrender of a prior policy was not a material misrepresentation in response to a question on the application which asked whether an insurer had cancelled any automobile insurance during the prior year. *Id.*

---

[1]There is no evidence in the record that Mr. Brennan provided his "typical" explanation to Mrs. Hall when the two of them filled out the application.

[2]Because the Court views the facts in the light most favorable to the non-moving party, the Court accepts as true Mrs. Hall's assertion that she spoke directly with Mr. Brennan about her dogs. However, the Court finds Mr. Brennan's actual knowledge of the Halls' dogs irrelevant due to Mrs. Hall's certification that the information on her application was correct.

17

In *Seymour Tubing, Inc. v. TIG Ins. Co.*, the Court found sufficient evidence to support a reasonable inference that the insurer had actual knowledge of a material fact not reflected on Seymour Tubing's Disclosure, thus preventing the insurer from voiding coverage due to the alleged misrepresentation. No. IP IP02-0509-C-B/S, 2004 WL 2272160 at *7 (S.D. Ind. September 24, 2004). However, the insurer's actual knowledge was only one of several factors the Court weighed in its decision. *Id*. The Court's conclusion that Seymour Tubing's failure to disclose a covered individual's hospitalization was not material to the underwriting process also factored heavily into the Court's analysis. *Id*. at *7-8. Moreover, *Seymour Tubing* involved an excess loss insurance contract to cover the medical expenses of Seymour Tubing's employees. *Id*. at *1. Unlike *Seymour Tubing*, the current case involves a simple contract for homeowner's insurance and contains clear evidence in the record that the Halls' dogs would have been a material consideration in Buckeye's decision to issue coverage.

Similar to *Seymour Tubing*, the case of *Ohio Farmers Insurance Company v. Vogel* involves a fact pattern in which the insurer had knowledge of the existence of a condition that would have affected its decision to provide coverage. 76 N.E. 977, 977 (Ind. 1905). However, unlike *Foster*, *Alterovitz* and *Brown*, the facts in *Vogel* do not include a material misrepresentation on an application which the insured certified to be correct, the main point on which this case, and others like it, turn.

In conclusion, the Court finds no genuine issues of material fact that preclude granting the Plaintiff's Motion for Summary Judgment. This Court finds that Mrs. Hall made a material misrepresentation on her application in response to a clear and unambiguous question which asked whether she owned animals. Mr. Brennan's knowledge of Mrs. Hall's dogs is irrelevant because Mrs. Hall certified that she had read her application and that the contents were correct. Consequently, the Halls are not entitled to coverage for the Brieanna Shivley dog bite claim under their homeowner's

18

insurance policy with Buckeye and Buckeye has no duty to defend or indemnify the Halls against the underlying tort claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Motion for Summary Judgment [DE 36]. In light of this Order and the Court's November 22, 2006 Order Staying the Proceedings as to the Halls' Third-Party Complaint for Indemnification, the Court now **VACATES** the Final Pretrial Conference set for **December 1, 2006**, and the Jury Trial set for **December 11, 2006**.

SO ORDERED this 29th day of November, 2006.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record